The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.

FILED
2008 Feb 05 PM 04:29
CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO



Mary Ann Whipple
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 07-31745 |
| | ) | |
| Amy Bernadette Schuerman, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### ORDER RE MOTION TO VACATE AND EXTEND TIME

The court held a hearing on Roger Landin's Motion to Vacate, Set Aside and To Extend Time. [Doc. #36]. The motion requests the court to vacate an order approving a compromise that Chapter 7 Trustee Bruce Comly French agreed to in settlement of two pending adversary proceedings to which both he and Landin are parties. Landin also seeks to extend time to object to the compromise, which he did not do before the court's order approving it was entered. After considering the testimony, evidence and arguments presented at the hearing, and for the reasons set forth below, the court will grant the motion.

### FACTUAL BACKGROUND

Debtor filed her Chapter 7 petition on April 30, 2007. Bruce Comly French was appointed as the Trustee. In her Schedule A. Real Property, Debtor listed an interest in property as follows:

> 23662 Rd. R, Fort Jennings, OH - ex-husband resides in said property and he was awarded the property in the parties' dissolution (11/22/06)-said property is part of a living trust

07-31745-maw    Doc 43    FILED 02/05/08    ENTERED 02/05/08 16:29:08    Page 1 of 13

The value of the property was scheduled as $290,000, encumbered by a mortgage securing a debt of $33,276.32. Debtor's Schedule D shows that the mortgage is held by Fort Jennings State Bank. Debtor's Statement of Intention sets forth the property interest and creditor name and states that she will surrender the property. On her Schedule B, she listed as personal property a "judgment against ex-husband [David R. Schuerman] for $5200 for his bill-not being paid by him @ $75 per week." Debtor claimed $400 of the judgment as exempt on her Schedule C. There are no executory contracts or unexpired leases listed on Schedule G. Landin and his wife are not listed as creditors. [*See* Doc. ## 1, 13]. Since they were not listed as creditors, the Landins were not given notice of the commencement of the Chapter 7 case in the ordinary course of the proceedings. [*See* Doc. ## 5, 6].

Unaware of the commencement of the Chapter 7 case by Debtor, on July 18, 2007, the Landins filed a lawsuit in the Putnam County, Ohio Court of Common Pleas against Debtor, David Schuerman, and James and Irma Ricker, who are David Schuerman's parents. [Doc. # 24]. The Landins' lawsuit was commenced on their behalf by Attorney Clayton Osting. The Trustee filed documents on October 2, 2007, to remove the state court lawsuit to this court, where it was docketed as Adversary Proceeding No. 07-3240. The subject of the Landins' state court complaint is the real property at 23662 Rd. R in Fort Jennings, Ohio listed on Debtor's schedules. The Landins' state court complaint avers that the Scheurmans own the real property subject to a life estate or other interest in the Rickers and a lease to the Landins to farm the property through the fall harvest in 2010. The source of the dispute was an alleged expressed intention on the part of at least David Schuerman and the Rickers to sell the real property, with the status of the Landins' lease to farm upon any sale left unclear. The state court complaint sought a declaratory judgment that the lease was valid and allowed the Landins to farm the property through the 2010 fall harvest and requested that the parties be restrained from interfering with the Landins' rights thereunder.

Prior to filing documents seeking removal of the Landins' state court lawsuit, the Trustee had directly commenced another adversary proceeding in this court on September 23, 2007. [Doc. #23]. His complaint was docketed as Adversary Proceeding No. 07-3234. In that action, the Trustee sued David Schuerman, the Rickers, Roger Landin (identified as Roger Landlin in the complaint), David Schuerman's sister and brother-in law, and other named and unnamed parties. The complaint averred that Amy Schuerman's conveyance or attempted conveyance of her interest in the property to David Schuerman in the divorce constituted a fraudulent conveyance, and sought among other relief a declaratory judgment of the estate's interest in the property, the rescission of any transfer, an

2

accounting of any rents paid by Landin, damages of $100,000 and partition. Landin filed an answer to the complaint in Adversary Proceeding 07-3234 on October 24, 2007, in which he set forth his claimed lease interest in the real property.

The Trustee moved to consolidate Adversary Proceeding No. 07-3234 and Adversary Proceeding No. 07-3240. After an initial pretrial conference on December 4, 2007, the court put further proceedings in each adversary proceeding in abeyance pending resolution of issues relating to the compromise.

On October 31, 2007, the Trustee had filed and served in this Chapter 7 case his Motion to Compromise Trustee's Interest in All Claims of Trustee for $17,900. [Doc. #27]. There were no exhibits or agreements attached. The motion to approve compromise stated in its entirety as follows:

> Comes now the Trustee, Bruce Comly French, Esquire, to move the Court to enter its Order authorizing a compromise in the sum of $17,900, due by December 1, 2007, for all claims that the Trustee may have in this case and the two Adversary Proceedings, *French, Trustee v. Erma Ricker, et al.*, Case No. 07-3234, and *Roger Landin, et al., v. James F. Ricker, et al.*, Case No. 07-3240.
> This settlement is in the best interest of the estate.

The Trustee properly appended at the end of the document notice of the response time to the motion in accordance with Local Bankruptcy Rule 9013-1. The notice specified in accordance with Fed. R. Bankr. P. 2002(a)(3) that parties in interest had 20 days to object, absent which the Trustee "may seek from the Court an Order approving the relief sought herein in substantially the form as requested." As shown by the certificate of service, the motion was served on October 31, 2007, on all creditors listed in the petition, and by e-mail on among others Attorney Clayton Osting. The last day of the 20 day notice period was Tuesday November 20, 2007. No responses, objections or requests for hearing were filed with the court. On Monday November 26, 2007, at 3:07 o'clock p.m. the court entered the following order:

> This matter came before the Court upon the filing of the Trustee's Motion to Compromise Trustee's interest in All Claims for $17,900.
> The Court finds that the Trustee gave to all appropriate persons notice of his intended action.
> Good cause thus exists to grant the Trustee the relief that he seeks.
> WHEREFORE, IT IS ORDERED That the Trustee is authorized to accept the sum of $17,900, by December 1, 2007, in complete settlement of the Trustee's interest in all claims in this case and the two Adversary Proceedings, *French, Trustee v. Erma Ricker, et al.*, Case No. 07-3234, and *Roger Landin, et al., v. James F. Ricker, et al.*, Case No. 07-3240.
> IT IS SO ORDERED.

3

[Doc. #30].

Just after the court's order was entered, at 4:08 p.m. on Monday November 26, 2007, Osting filed a late Objection to Proposed Settlement on behalf of Roger Landin, also identified in the objection as Roger Landing. [Doc. # 31]. The objection stated that:

> Said settlement is an attempt to defeat the interest of Roger Landin to farm the realty in question and any settlement approved by this court should include Roger Landin's right pursuant to the contract signed by the debtor and the other parties. Wherefore, Roger Landin requests a hearing be conducted to determine the right and extent of his farming interest in the subject realty and that any settlement should be subject to Roger Landin's contractual rights in this realty.

After the filing of the motion to approve compromise and before the court's order granting that motion was entered, the Trustee also filed on Tuesday November 20, 2007, his Motion to Authorize the Trustee to Sign Legal Instruments. [Doc. #29]. That motion stated in its entirety as follows:

> Comes now the Trustee, Bruce Comly French, Esquire, to move the court to enter its Order authorizing the trustee to sign legal instruments where the asset of Amy Schuerman has become an asset of the Estate. These would include, at a minimum, warranty or quit claim deeds and bank drafts.

The Trustee appended at the end of the document notice of the response time to the motion in accordance with Local Bankruptcy Rule 9013-1. The notice specified further in accordance with Local Bankruptcy Rule 9013-1 that parties in interest had 10 days to object, absent which the Trustee "may seek from the Court an Order approving the relief sought herein in substantially the form as requested." As shown by the certificate of service, the motion was served on November 20, 2007, including by e-mail on Osting. The court construed this motion as relating to the compromise motion. After the untimely Landin objection to the compromise was filed, the court set the motion for authority to sign instruments for hearing by order dated November 29, 2007. [Doc. #33]. To the extent that the Landin objection was directed at the motion for authority to sign instruments, it was timely. The hearing on the motion for authority to sign legal instruments was set for December 4, 2007, at the same time that was previously set for the continued pretrial conferences and the motions to consolidate in the two adversary proceedings.

At the hearing on December 4, 2007, the court informed Osting that it would not consider the Landin objection because the order approving the compromise was in full effect and because the objection was untimely and filed without leave of court. The court indicated, however, that it would

4

hold further proceedings in abeyance in the adversary actions and on the Motion to Authorize the Trustee to Sign Legal Instruments in order to allow the filing of a motion to vacate the November 26, 2007, order and to allow the late filing of the objection to the proposed compromise. Osting was afforded seven days leave in which to file such a motion, which was accomplished on December 11, 2007, with the filing of Landin's instant Motion to Vacate, Set Aside and To Extend Time. [Doc. #36].

The court held the hearing on the Landin's motion to vacate the order approving the compromise on January 18, 2008. Trustee French, Osting, David Schuerman and Landin testified. Three exhibits were admitted: the lease document, the deed for the property in issue and Amy Schuerman's bankruptcy petition and schedules.

## **LAW AND ANALYSIS**

Landin seeks two related aspects of relief, vacating the order approving the compromise and extending the deadline for opposing the compromise. Unless the court vacates the order of approval, the request to extend the deadline for opposing the compromise is moot.

The court construes Landin's motion insofar as it seeks to vacate the order approving Trustee French's proposed compromise as being brought under Rule 9024 of the Federal Rules of Bankruptcy Procedure. In turn, Rule 9024 incorporates Rule 60 of the Federal Rules of Civil Procedure, including Rule 60(b). Rule 60(b) permits courts to "relieve a party or a party's legal representative from a final judgment, order, or proceeding"[1] including on grounds of "(1) mistake, inadvertence, surprise, or excusable neglect." The movant has the burden of proof in a Rule 60(b)

---

[1] The court now has doubts that the order approving the compromise is a final order that actually requires application of Rule 60(b) in order to vacate it. Orders approving compromises are generally treated as final orders in bankruptcy cases. *Adam v. Itech Oil Co. (In re Gibraltar Res., Inc.)*, 210 F.3d 573, 576 (5th Cir. 2000); *Timmons v. Deere Credit, Inc. (In re Erin Farms, Inc.)*, 336 B.R. 600, 2005 Bankr. LEXIS 2857, *2-*3 (B.A.P. 6th Cir., December 7, 2005) (unpub.). However, before the order approving the compromise was entered the Trustee filed the motion seeking additional authority related to the proposed compromise beyond that contained in the November 26, 2007, court order. His motion for authority to sign legal instruments remains pending. The motion to approve compromise speaks only of settling the estate's claims in "this case" and in the two adversary proceedings. There is no written agreement or intimation that any property interest of the estate is being sold or transferred, free and clear of liens or claims, such as the Landins' alleged interest, or otherwise. *See* 11 U.S.C. § 363(b), (f); *cf.* 11 U.S.C. § 363(h). Yet the second motion seeks authority to execute "at a minimum, warranty or quit claim deeds." The court will nevertheless analyze the request for relief as if Rule 60(b) governs.

5

motion. *Manufacturers' Industrial Relations Ass'n v. East Akron Casting Co.*, 58 F.3d 204, 207 (6th Cir. 1995). In deciding a Rule 60(b) motion, the Sixth Circuit directs the court to consider the following factors:

> (1) Whether culpable conduct of the defendant led to the default; (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced.

*Waifersong Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290 , 292 (6th Cir. 1992). However, the court must first determine that the default entry did not result from the culpable conduct of the opposing party. *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 794 (6th Cir. 2002). The moving party has the burden to show that the default was "the product of mistake, inadvertence, surprise, or excusable neglect." *Id.* If the court finds mistake, inadvertence, surprise or excusable neglect, then the court must consider the remaining two factors. *Id.*

Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, which Landin cites as the basis to allow his untimely objection to the compromise to be considered, "empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect.'" *Pioneer Investment Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 382 (1993). The burden of proving excusable neglect under Rule 9006(b) is also on the party seeking enlargement of time under Rule 9006(b). *In re Enron Corp.*, 419 F.3d 115, 121 (2nd Cir. 2005); *In re Velker*, 145 B.R. 30, 32 (Bankr. N.D. Ohio 1992).

The two standards have the initial common factor of requiring a finding of excusable neglect as a condition of relief. The Supreme Court addressed the standards for a finding of excusable neglect in *Pioneer*. The procedural context of the holding in *Pioneer* is Rule 9006(b). And although the Supreme Court observed in *dicta* that excusable neglect under Rule 9006(b) is not always co-extensive with excusable neglect under Rule 60(b), *Pioneer Inv. Servs. Co.*, 507 U.S. at 394-95, in the present case the same factors will apply under both rules. *See Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 386 (6th Cir. 2001). The Supreme Court emphasized in *Pioneer* that "excusable neglect" is not limited to errors caused by circumstances beyond the late-filing party's control but also may extend to errors caused by "inadvertence, mistake or carelessness." *Pioneer Inv. Servs. Co.,* 507 U.S. at 388. The Supreme Court explained that a determination of whether a party's neglect is 'excusable' is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the

6

reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395.

First, the court must decide whether a party's failure to act was due to "neglect." *Id.* at 388-93. Landin quite sensibly hired a lawyer to address his lease issues in state court, and appears to have expected Osting to address those issues in this court as well once he finally learned there was a bankruptcy case that affected him. Osting explained that he failed to file an objection to the proposed compromise on Landin's behalf on or before November 20, 2007, which was the Wednesday before Thanksgiving, because he first wanted to talk to the Trustee about the terms of the settlement based on an earlier conversation, before the motion was filed, in which the Trustee had indicated that he would try to negotiate a global settlement of all issues and proceedings. While the extent and nature of his efforts to contact the Trustee are not clear, Osting was unsuccessful in reaching and talking to the Trustee until after November 20, 2007, and indeed until the same day upon which the order of approval was entered. Osting then first learned from the Trustee that Landin's interests were not resolved by or addressed in the Trustee's proposed compromise. Osting's inaction in the face of the written deadline of which he was given explicit and proper notice in accordance with the Local Rules and the Federal Rules of Bankruptcy Procedure, and *especially* given his stated inability to reach the Trustee, is certainly within the realm of "neglect" in that he left something undone through carelessness in attention to a deadline.

Second, the court must decide whether the neglect of the deadline for objection by both the party and his lawyer was excusable. *Pioneer*, 507 U.S. at 395. There is nothing in the record that shows Landin was given direct notice of the motion for approval of the compromise. Rather, it was served only on Osting by e-mail. Thus, having hired counsel, Landin cannot in this instance fairly be held to an obligation to police the deadline and address the issue himself. Moreover, there was nothing about his background or testimony at the hearing that would suggest to the court any familiarity with complex legal proceedings. Any neglect on Landin's part was excusable.

As the Supreme Court emphasized in *Pioneer*, however, parties may properly be penalized for the neglect of their chosen counsel, requiring that "the proper focus [be] upon whether the neglect of respondents *and their counsel* was excusable." *Id.* at 398 (emphasis original). The first factor identified in *Pioneer* is the danger of prejudice to the other party. There is minimal prejudice to the Trustee from the delay, other than the extra work and time required to litigate the merits of the compromise as being in the bests interest of the estate, and there are no evident concerns regarding loss of evidence, or fraud potential. *See Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)(stating

7

that prejudice must amount to more than simply giving an opportunity to defend on the merits and "setting aside a default must prejudice plaintiff in a more concrete way, such as loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion"); *see also In re Geberegeorgis*, 310 B.R. 61, 67 (B.A.P. 6th Cir. 2004)(finding no prejudice, even though party opposing motion to vacate argued the detrimental effect of a loss of finality). The Trustee indicated that he has received and is holding the $17,900 stated in the motion. And while he is under a statutory duty to "expeditiously" liquidate property of the estate, 11 U.S.C. § 707(a)(1), the delay to be encountered by addressing the merits of the compromise will not at this point interfere with that Congressional directive. The Rickers and David Scheuerman, whom the court presumes to be the other parties to the settlement, did not raise any prejudice at the hearing. The first factor favors a finding of excusable neglect.

The second *Pioneer* factor is the length of the delay and its impact on the judicial proceedings. The length of the delay was minimal, with Osting making Landin's objection known on the record 5 days after the deadline for response and just minutes after the court's order was entered. The delay and its impact on the proceedings is notably limited because there is still pending before the court a motion seeking further court authority related to implementation of the compromise. Thus, to the extent the order approving the compromise is final the Trustee is still seeking supplemental authority that has not yet been ruled upon. The second factor favors a finding of excusable neglect.

The third *Pioneer* factor is the reason for the delay and whether it was in the reasonable control of the moving party. Osting testified that he did not file an objection because he wanted to clarify the terms of the compromise and how Landin's interest was involved, and could not reach the Trustee to talk about it until November 26, 2007, after the deadline. Two factors together make this excuse for carelessness reasonable. First, as the Trustee acknowledges, Osting did talk to the Trustee about the possibility of a global settlement including the Landins' disputes. The Trustee confirms that he helpfully indicated he would make "every effort in the resolution to take into account your client's interest as land tenant." Second, the motion itself does not clearly set forth the terms of the compromise. At the hearing, the court asked the Trustee about what the terms of the compromise involved, specifically what was being settled by whom and how. This line of inquiry probably should have occurred before the court signed its November 26, 2007, order given the brevity of the motion, the complex procedural posture of the record in the face of the two adversary proceedings and the absence of a written settlement agreement. *See Motorola, Inc. v. Official Comm. of Unsecured*

8

*Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 461-62 (2d Cir. 2007)("Bankruptcy Rule 9019...has a 'clear purpose...to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'")(quoting *In re Masters*, 141 B.R. 13,16 (Bankr. E.D.N.Y. 1992)). The Trustee explained at the hearing that he was not selling or transferring any interest in property, and ultimately did not intend in any way to affect any interest that the Landins have in the property. Rather, he said he intended only to dismiss the fraudulent conveyance adversary proceeding with prejudice and have the state court action remanded so that the Landins, Schuermans and Rickers could have the issues raised about relative rights in the property determined there. That explanation seems somewhat at odds, however, with the pending ancillary request for court authority to execute a warranty deed. Moreover, the Trustee reported that the settlement amount of $17,900 also includes liquidation of Debtor's uncollected judgment for $5,200 against David Schuerman, which was not specifically stated in the motion to compromise as being resolved for $2,900, except to the extent it might be understood generally from the phrase "all claims in this case" that the judgment was also being liquidated somehow as part of the total consideration. The motion to approve the settlement does not actually state who the settling parties are and who is paying the consideration. The lack of specificity in the motion about what was being settled and how is very similar to the notice concern the Supreme Court emphasized in *Pioneer* as significant to a finding of excusable neglect. Thus the articulated reason for delay also favors a finding of excusable neglect.

Finally, nothing in the record indicates that the failure to object timely to the proposed compromise is attributable to Landin's or Osting's lack of good faith or willful failure to follow court rules or orders.

The determination as to whether neglect is excusable being an equitable one, consideration of the *Pioneer* factors shows that the equities in this case support a finding of excusable neglect for purposes of both Rule 60(b)(1) and Rule 9006(b). This finding also comports with the Sixth Circuit's generally expressed preference that "a technical error or a slight mistake by [movant's] attorney should not deprive [movant] of an opportunity to present the true merits of [his] claim." *In re Salem Mortgage Co.*, 791 F.2d 456, 459 (6th Cir. 1986).

Having found excusable neglect, Landin must also satisfy the other two factors of the *Waifersong* test to have the order approving the compromise vacated under Rule 60(b)(1). The court has already found minimal prejudice to the estate and other parties in interest. The more difficult issue is whether Landin has a meritorious argument that the compromise is not in the best interests

9

of the estate, which in this context would amount to a "meritorious defense." The key in deciding whether this prong has been met is whether there is "some possibility" of the result after a hearing on the merits being contradictory to the result attained from the order entered upon default. *Williams v. Meyer*, 346 F.3d 607, 614 (6th Cir. 2003).

Landin's original untimely objection to the motion and many of his arguments at the hearing demonstrated a material misapprehension both of the issues that could properly be considered upon vacation of the order and of the Trustee's duties. Landin indicated essentially that he wanted time to conduct his discovery in the adversary proceedings and litigate the issues therein on the merits so that he can have "his day in court." Specifically, Osting indicated that he wanted a hearing to be conducted "to determine the right and extent of his farming interest in the subject realty and that any settlement should be subject to Roger Landin's contractual rights in realty." [Doc. # 31]. Notwithstanding the Trustee's statement that he would do his best to effect a global settlement, he had and has no duty to do so, and no duty to reach any settlement that determines, preserves or recognizes Landin's interest as a land tenant. Rather, his fiduciary duty is owed to the estate.

Likewise, as the court emphasized at the hearing, the only issue before the court upon vacation of the order to approve the compromise would be the narrow one of whether it is in the best interests of the estate. The approval of a proposed compromise is not litigation of the merits of any underlying claims or controversies being settled. It is apparent from Debtor's schedules, the two adversary proceedings and the testimony of Landin and David Schuerman at the hearing that Debtor's interests in property that became property of the estate, as well as the interests of others to the extent they may affect the value of any interest she has, are hotly disputed. Under Bankruptcy Rule 9019, the court may approve a compromise or settlement "[o]n motion by the trustee and after notice and a hearing. . . ." The rule offers no guidance on the criteria to be used in evaluating whether a compromise and settlement should be approved. However, in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968), the Supreme Court addressed the analysis that bankruptcy courts should employ. The Supreme Court instructed that the bankruptcy court must "apprise [itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated" and "should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Id.* at 424. To this end, bankruptcy

10

courts have considered the following factors when asked to approve a compromise:

> (1) the probability of success in litigation;
> (2) the difficulties, if any, to be encountered in collecting any judgments that might be rendered;
> (3) the complexity of the litigation involved, as well as the expense, inconvenience and delay necessarily attendant to the litigation; and
> (4) the paramount interests of creditors with proper deference to their reasonable views.[1]

*McGraw v. Yelverton (In re Bell & Beckwith)*, 87 B.R. 476, 478 (N.D. Ohio 1988) (citing *In re A & C Properties,* 784 F.2d 1377, 1381 (9th Cir. 1986)); *see also Waldschmidt v. Commerce Union Bank (In re Bauer)*, 859 F.2d 438, 441 (6th Cir. 1988) (explaining that "the court is obligated to weigh all conflicting interests in deciding whether the compromise is 'fair and equitable,' considering such factors as the probability of success on the merits, the complexity and expense of litigation, and the reasonable views of creditors").

In considering these factors, the court does not resolve disputed factual and legal issues or conduct a mini-trial, as Landin has requested, nor should it substitute its judgment for that of the trustee. *Bell & Beckwith*, 87 B.R. at 478; *Olson v. Anderson (In re Anderson)*, 377 B.R. 865, 870-71(B.A.P. 6th Cir. 2007). It should, however, canvass the issues and determine whether the proposed settlement "'falls below the lowest point in the range of reasonableness.'" *Bell & Beckwith*, 87 B.R. at 479 (citation omitted). In the end, the essential inquiry the court must make is whether the compromise is in the best interests of the estate. *Id.* at 478. The Trustee, as the proponent of the compromise, has the burden of persuasion on that issue. *Id.* at 478; *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986).

In addition, to an extent that is presently not clear to the court, the compromise may involve the sale of assets of the estate. *See Goodwin v. Mickey Thompson Entertainment Group, Inc. (In re Mickey Thompson Entertainment Group, Inc.)*, 292 B.R. 415, 421 (B.A.P. 9th Cir. 2003) (citing *Myers v. Martin (In re Martin)*, 91 F.3d 389, 394-95 (3rd Cir. 1996) and finding that "the disposition by way of 'compromise' of a claim that is an asset of the estate is the equivalent of a sale of the intangible property represented by the claim"). As such, in addition to Rule 9019, the Agreement

---

[1] The Trustee and the Attorney for David Schuerman and the Rickers stipulated at the hearing that Landin has standing to contest the settlement. The court agrees. He has at least a contingent and unliquidated claim against Debtor arising out of his claimed lease interest in the real property.

11

may implicate the Bankruptcy Code's sale provisions under § 363, as implemented by Rule 6004. *Id.* Bankruptcy trustees are permitted to sell property of the estate outside the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b). "The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances." *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 288 (B.A.P. 9th Cir. 2005). As one court observed:

> When confronted with a motion to approve a settlement under Rule 9019(a), a bankruptcy court is obliged to consider, as part of the "fair and equitable" analysis, whether any property of the estate that would be disposed of in connection with the settlement might draw a higher price through a competitive process and be the proper subject of a section 363 sale. Whether to impose formal sale procedures is ultimately a matter of discretion that depends upon the dynamics of the particular situation.

*Goodwin*, 292 B.R. at 422.

Indeed the latter possibility raises the only issue on the merits that justifies vacating the order approving the compromise. Landin's motion to vacate avers that "[t]he settlement of the Debtor's interest is undervalued by the trustee. Irma Ricker is approximately seventy-seven (77) years old and James Ricker is approximately eighty-three old. [sic]. Further the parties with the remainder interest are in their forties." Debtor's schedules admitted in evidence at the hearing show a property value of $290,000 subject to a mortgage of only $33,276, while the judgment amount being settled for $2,900 is identified in Debtor's schedules as being in the amount of $5,200. Based on these facts, the court cannot say that there is not at least "some possibility" that the compromise would not be approved after a hearing on whether it is within the range of reasonableness given the factors identified above. Accordingly, solely for purposes of Landin's Rule 60(b)(1) motion, the court finds that there is a "meritorious defense."

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Motion to Vacate, Set Aside and To Extend Time [Doc. #36] be, and it hereby is, **GRANTED;** and

**IT IS FURTHER ORDERED** that the Order Relating To Trustee's Motion To Compromise Trustee's Interest In All Claims Of Trustee For $17,900 [Doc. #30] entered on November 26, 2007 is **VACATED**; and

**IT IS FURTHER ORDERED** that the Objection to Settlement [Doc. # 31] filed on November 26, 2007, is deemed timely filed;

**IT IS FURTHER ORDERED** that the Trustee shall supplement the Motion to Authorize the

07-31745-maw    Doc 43    FILED 02/05/08    ENTERED 02/05/08 16:29:08    Page 12 of 13

Trustee to Sign Legal Instruments [Doc. #29] by identifying the legal instruments that need to be executed to implement the compromise on or before **February 15, 2008**; and

**IT IS FURTHER ORDERED** that an evidentiary hearing on both the Motion to Compromise Trustee's Interest in All Claims of Trustee for $17,900 [Doc. #27] and the Motion to Authorize the Trustee to Sign Legal Instruments [Doc. #29] will be held on **March 13, 2008, at 2:00 o'clock p.m.**